1  LINDA Z. VOSS, ESQ  SBN 111434
   LAW OFFICES OF LINDA Z. VOSS
2  100 N BRAND BLVD., # 14
   GLENDALE CA 91203
3  TEL: 888-999-4313

4  Attorney for Plaintiff

5

6

7              **UNITED STATES DISTRICT COURT**

8              **SOUTHERN DISTRICT OF CALIFORNIA**

9  LAC T HOILIEN,  individuals, on behalf of       **CASE NO.** '14CV0110 H    NLS
   themselves and all others similarly situated.

10                                                  **COMPLAINT VERIFIED**
                                                    DAMAGES EXCESS $25,000
11                      Plaintiffs,
        v.                                          **DEMAND JURY TRIAL**
12

13 FIRST HORIZON HOME LOAN
   CORPORATION., as the Original Lender;
14 THE BANK OF NEW YORK.Trustee of
   FIRST HORIZON ALTERNATIVE              1.  UNFAIR TRADE PRACTICES IN
15 MORTGAGE SECURITIES TRUST 2007-            VIOLATION OF 15 USC§45
   FA-3; NATIONSTAR MORTGAGE, LLC.,     2.  VIOLATION OF 15 USC §1601
16 as the Mortgage Servicer and all persons   3.  VIOLATION OF HRS CHAPTER 480
   unknown, claiming any legal or equitable     UNFAIR TRADE AND DECEPTIVE
17 right, title, estate, lien, or interest in the   ACTS AND PRACTICES.
   property described in the complaint adverse 4.  VIOLATION OF FAIR DEBT
18 to Plaintiff' title, or any cloud on Plaintiff'   COLLECTION PRACTICES ACT
   title thereto and, does, 1 through 100,    5.  VIOLATION OF RESPA
19 inclusive                                 6.  VIOLATION OF FAIR CREDIT
                                                 REPORTING ACT.
20                      Defendants,         7.  FRAUD
                                            8.  WRONGFUL INTENTENDED
21                                              FORECLOSURE/LACK OF STANDING
                                            9.  INTENTIONAL INFLICTION OF
22                                              EMOTIONAL DISTRESS
                                           10. SLANDER OF TITLE
23                                         11. CIVIL RICO VIOLATION
                                           12. BAD FAITH / BREACH OF IMPLIED
24                                              COVENANT OF GOOD FAITH AND
                                                FAIR DEALING
25                                         13. DECLARATORY JUDGMENT
                                           14. INJUNCTIVE RELIEF.
26

27

28

COMES NOW the PLAINTIFF   LAC T. HOILIEN [hereafter, PLAINTIFF] who submits the following verified complaint as follows:

## JURISDICTION AND VENUE

1.   This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1332, 1343, and 42 U.S.C. §1983, which confer original jurisdiction on federal district, courts in suits to address the deprivation of rights secured by federal law and matters between diverse citizens that involve an amount in controversy in excess of $75,000.00. This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C.§1367.

2.   Jurisdiction also arises under 15 U.S.C. 1601 et.seq., 15 U.S.C. 1605 , 15 U.S.C. 1635, 15 U.S.C. 1640, Title 12, Regulation Z, Part 226 et.seq., Title 24 C.F.R., Regulation X, Part 3500. This court also has authority to hear Federal Law and laws of the State of California.

3.   The-unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Federal Southern District of California and the involved real property located in the Federal  Southern District of  California. Therefore, venue properly lies in this District, pursuant to 12 U.S.C. §2614 and 28 U.S.C. §1391(b).

4.   Plaintiffs are ignorant of the true identity and capacity of defendants designated as Does 1-100, but will amend the Complaint when their identities have been ascertained according to proof at the time of trial. Plaintiffs allege on information and belief, however, that each and every Doe Defendant is in some manner responsible for the acts, and conduct of the other defendants, and were, and are responsible for the injuries, damages, and harm, incurred by Plaintiffs. Plaintiffs further allege on information and belief that each such designated defendant acted, and acts, as the authorized agent, representative, and associate of the other defendants in doing the things alleged herein.

5.   Whenever reference is made in this Complaint to any act of any defendant(s), that allegation shall mean that each defendant acted individually and jointly with the other defendants.

6.   Any allegation about acts of any corporate or other business defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

7.   At all relevant times, each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the defendants acted as the agent of the other defendants, and all of the defendants acted within the scope of their agency if acting as an agent of the other.

8.   At all relevant times, each defendant knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the other defendants were engaging in or planning to engage in unlawful conduct, each defendant nevertheless facilitated the commission of those unlawful acts. Each defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct.

## INTRODUCTION

9.   Plaintiffs are aware that FIRST HORIZON HOME LOAN CORPORATION  (herein after referred to as "Original Lender") has made many residential real estate loans and used those loans as collateral for mortgage-backed securities.[1]  Many of the loans went into default, which

---

[1]  Mortgage-backed securities are created through a complex process known as "securization." (See Levitin & Twomey, *Mortgage Servicing* (2011) 28 Yale J. on Reg. 1, 13 ["a mortgage securitization transaction is extremely complex"].)  In simplified terms, "securitization" is the process where (1) many loans are bundled together and transferred to a passive entity, such as a trust, and (2) the trust holds the loans and issues investment securities that are repaid from the mortgage payments made on the loans.  (Oppenheim & Trask-Rahn, *Deconstructing the Black Magic of Securitized Trusts: How the Mortgage-Backed Securitization Process is Hurting the Banking Industry's Ability to Foreclose and Proving the Best Offense for a Foreclosure Defense* (2012) 41 Stetson L.Rev. 745, 753-754 (hereinafter, *Deconstructing Securitized Trusts*).)  Hence, the securities issued by the trust are "mortgage-backed." For purposes of this opinion, we will refer to such a trust as a "securitized trust."

led to non-judicial foreclosure proceedings.  Some of the foreclosures generated lawsuits, which raised a wide variety of claims.

10. This is an action brought by **Plaintiffs** mainly for (1) Assignment of Deed of Trust a recorded document related to the foreclosure contained MICHAEL FISHER and MARCIA WILLIAMS not an employee nor officer of MERS, INC but a well-known robo-signor and questionable notary of RANDOLPH BAYO JR, hereto attached as **EXHIBIT 2** and (2) the foreclosing entity was not the true owner of the loan because its chain of ownership had been broken by a defective transfer of the loan to the securitized trust established for the mortgage-backed securities.  Here, the specific defect alleged is that the attempted transfer were made after the closing date of the securitized trust holding the pooled mortgages and therefore the transfers were ineffective.

11. Plaintiff, in bringing this action, has no intention of eluding payment of obligation but being informed of who are the right party of interest to receive payment and negotiate with regarding Loss Mitigation.

12. **Plaintiffs**, homeowners, dispute the title and ownership of the real property in question (the "Home"), which is the subject of this action, in that the originating mortgage lender, and others alleged to have ownership, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Deed of trust related to the Property, and thus, do not have lawful ownership or a security interest in **Plaintiffs**' Home which is described in detail herein.

13. **Plaintiffs** allege that **Defendant**s, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and Deed of Trust, resulting in imperfect security interests and claims.

14. **Plaintiffs** further alleges that **Defendants**, and each of them, cannot establish

possession and proper transfer and/or endorsement of the Promissory Note and proper assignment of the Deed of Trust herein; therefore, none of the **Defendants** have perfected my claim of title or security interest in the Property.  **Defendants** have not perfected any claim of title or security interest in the Subject Property.  **Defendants**, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired.

15. **Plaintiffs** allege that an actual controversy has arisen and now exists between the **Plaintiffs** and **Defendants**, and each of them.  **Plaintiffs** desire a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Deed of Trust.

16. **Plaintiffs** also seek redress from **Defendants** identified herein below for damages, for other injunctive relief, and for cancellation of written instruments based upon:

a.  An invalid and unperfected security interest in **Plaintiffs'** Home hereinafter described;

b.  Void "True Sale(s)" violating New York law and express terms of the Pooling and Servicing Agreement ("PSA") governing the securitization of **Plaintiffs**; mortgage, which is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transaction (see further discussion of the PSA herein);

c.  An incomplete and ineffectual perfection of a security interest in **Plaintiffs'** Home;

d.  Violations of 15 U.S.C. §45 (Unfair methods of competition unlawful; prevention by Commission)

e.   Avoid or voidable Deed of Trust due to improper securitization, for which there is a reasonable apprehension that, if left outstanding, may cause a serious injury.

### THE PARTIES

17. Plaintiff is now, and at all times relevant to this action, resident of and domiciled in the County of San Diego, State of California.

18. Upon information and belief Defendants FIRST HORIZON HOME LOAN CORPORATION [hereafter, ORIGINAL LENDER]; TITLE GUARANTY[hereafter, TITLE COMPANY]; FIRST HORIZON HOME LOAN CORPORATION , [hereafter, PSA MASTER SERVICER]; FIRST HORIZON ASSET SECURITIES, INC [hereafter, PSA DEPOSITOR]; THE BANK OF NEW YORK. [hereafter, PSA TRUSTEE]; FIRST TENNESSEE BANK, NATIONAL ASSOCIATON [hereafter, PSA CUSTODIAN]; FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TRUST 2007-FA3. [hereafter, PSA ISSUING ENTITY]; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC [hereafter, BENEFICIARY] are corporations incorporated and doing business in the State of Hawaii at all pertinent times herein mentioned.

19. DOE Defendants 1 through 100, inclusive, are various individuals, partnerships, associations, corporations, and other entities claiming any legal right, title, estate, lien or interest in the property, as described herein below, adverse to PLAINTIFF's interests. PLAINTIFF will make a good faith effort to determine the true names and identities of these parties. PLAINTIFF reserves the right to amend this Complaint to add such parties as their true identities and capacities are ascertained through discovery or otherwise.

20. The Plaintiffs may bring in or consolidate with this case other persons who are similarly situated to Plaintiffs identified above.  Further, at all times material hereto, any of the Defendants have acted in the same or in another capacity with respect to loan processing.  All of the foregoing

secured real estate loans made to Plaintiffs were wrongfully handled and processed by Defendants, resulting in legally compensable damages to plaintiff.  From time-to-time, upon conducting the due diligence and learning the information sufficient to add remaining Plaintiffs to this action, Plaintiffs shall seek leave of this Court to amend this Complaint to name these additional Plaintiffs, or will follow such other process as is prescribed by the Court. In the event Plaintiffs believe it is in furtherance of judicial economy and justice to add all or any of these additional persons to this Complaint, Plaintiffs shall bring a noticed motion and to add such parties to this action or follow such procedure as the Court in this case may specify.  In the event Plaintiffs file a separate lawsuit appertaining to all or any of these persons, or such further number as may exist in view of future developments, Plaintiffs shall file all appropriate Notices of Related Cases in accordance with California law, or as otherwise directed by the Court.

21. Defendant FIRST HORIZON HOME LOAN CORPORATION , ("ORIGINAL LENDER") is doing business in the County of Maui , State of Hawaii.  Plaintiffs are further informed and believe, and thereon allege, that "ORIGINAL LENDER", is the Originator of the loan and/or purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.  Plaintiffs are further informed and believe that the "ORIGINAL LENDER" is a participant in fraud on the Plaintiff in the origination of the note.

22. Doe Defendant, GUARANTY TITLE, as the "TITLE COMPANY" who oversee the recording and processing of both Deed of Trust and Promissory Note is doing business in the County of Maui, State of Hawaii.  Plaintiffs are further informed and believe, thereon allege, that the Original Trustee and Title Company of the loan and/or purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.  Plaintiffs are further

informed and believe that the "TITLE COMPANY" is a participant in fraud on the Plaintiff in the origination of the note..

23. Defendant, NATION STAR MORTGAGE, LLC. ("SERVICER"), is a National Banking Association, doing business in the County of Maui, State of Hawaii.  Plaintiffs are further informed and believe, and thereon allege, that "SERVICER", is the present purported Master Servicer of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

24. Doe Defendant, FIRST HORIZON HOME LOAN CORPORATION ("PSA SPONSOR and SELLER"), is doing business in the County of Maui, State of Hawaii.  Plaintiffs are further informed and believe, and thereon allege, that "PSA SPONSOR and SELLER" is the present purported Securitization Seller of a portion of the mortgage loans.  The remainder of the mortgage loans will be sold directly to the depositors by one or more special purpose entities that were established by "DEPOSITOR" which, in turn, acquired those mortgage loans directly from "ORIGINAL LENDER" herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

25. Doe Defendant, FIRST HORIZON HOME LOAN CORPORATION, ("PSA SERVICER"), is a National Banking Association, doing business in the County of Maui, State of Hawaii.  Plaintiffs are further informed and believe, and thereon allege, that "PSA SERVICER", is the present purported Master Servicer of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

26. Doe Defendant, FIRST HORIZON ASSET SECURITIES INC ("DEPOSITOR"), is

doing business in the County of Maui State of Hawaii. Plaintiffs are further informed and believe, and thereon allege, that "DEPOSITOR" is the present purported Securitization Depositor of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

27. Defendant, THE BANK OF NEW YORK ("TRUSTEE"), is a National Banking Association, doing business in the County of Maui, State of Hawaii. Plaintiffs are further informed and believe, and thereon allege, that "TRUSTEE", is the present purported PSA Trustee and Custodian of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

28. Doe Defendant, FIRST TENNESSEE BANK, NATIONAL ASSOCIATION ("PSA CUSTODIAN"), is a National Banking Association, doing business in the County of Maui, State of Hawaii. Plaintiffs are further informed and believe, and thereon allege, that "PSA CUSTODIAN", is the present purported PSA Trustee and Custodian of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

29. Defendant, FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TRUST 2007-FA3 . ("PSA ISSUING TRUST"), is doing business in the County of Maui, State of Hawaii Plaintiffs are further informed and believe, and thereon allege, that "PSA ISSUING TRUST", is the present purported PSA Issuing Trust of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

30. At all times relevant to this action, Plaintiffs have owned the Property located at 585 LINEKONA STREET, WAILUKU HI 96793 (the "Property" or "Subject Property").

31. Plaintiffs do not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiffs, or claims some right, title, or interest in the Property. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and therefore allege, that all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiffs so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

32. Plaintiffs are informed and believe, and thereon allege, that's at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## FACTUAL BACKGROUND AND ALLEGATIONS

### The Loan

33. Plaintiff purportedly signed a Promissory Note ("Note") on March 1, 2007 and a Deed of Trust ("DOT") on March 1, 2007 after completing closing documents for the loan of $368,220.00, with a purported loan from Doe Defendant FIRST HORIZON HOME LOAN CORPORATION, for the real property set forth above and commonly known as "Subject Property". Both documents were signed on March 1, 2007  and recorded on March 06, 2007 at 8:01 am. Subject Property is further described as Assessor's Parcel Number 3-4-028-075. The DOT was recorded on March 6, 2007  am as Document # 2007-040278  with the State of Hawaii Bureau of Conveyances  and is attached hereto as **EXHIBIT 1** and incorporated herein by this

reference.

34.     Paragraph 20 of the **Plaintiff's** Deed of Trust contained the traditional terms of a deed of trust and states that the note, together with the deed of trust, can be sold one or more times without prior notice to the borrower.  In this case, a number of transfers purportedly occurred.  The validity of attempts to transfer **Plaintiff**'s note and deed of trust to a securitized trust is a fundamental issue in this complaint.

35.     Paragraph 22—another provision typical of deeds of trust—sets forth the remedies available to the lender in the event of a default.  Those remedies include (1) the lender's right to accelerate the debt after notice to the borrower and (2) the lender's right to "invoke the power of sale" after the borrower has been given written notice of default and of the lender's election to cause the property to be sold.  Thus, under the **Plaintiff's** deed of trust, it is the lender-beneficiary who decides whether to pursue non-judicial foreclosure in the event of an uncured default by the borrower.  The trustee implements the lender-beneficiary's decision by conducting the non-judicial foreclosure.[2]

36.     Plaintiff's loan had an adjustable interest rate, which caused his monthly loan payment to increase.  Plaintiff attempted to work with Nationstar Mortgage, LLC. loan modification department to obtain a modification of the loan.  There is no dispute that Plaintiff defaulted on the loan by failing to make the monthly installment payments.

**Creation of the Securitized Trust**

37.     **Plaintiffs** are informed and believe, and thereon allege, that this loan was securitized, with the Note not being properly transferred to **Defendant**, THE BANK OF NEW

---

[2]  Civil Code section 2924, subdivision (a)(1) states that a "trustee, mortgagee, or beneficiary, or any of their authorized agents" may initiate the non-judicial foreclosure process.  This statute and the provision of the Subject deed of trust are the basis for Plaintiff's position that the non-judicial foreclosure in this case was *wrongful*—namely, that the power of sale in the Plaintiff's deed of trust was invoked by an entity that was not the true beneficiary.

YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE HOLDERS OF THE CERTIFICATES, FIRST HORIZON MORTGAGE PASS-THROUGH CERTIFICATES SERIES FH07-FA3..  As set forth herein above, the Securitized Trust was formed by execution of the PSA.  This information is embodied in the Assignment of Deed of Trust herein attached as **EXHIBIT 2.**

38.   On or before April 1, 2007, the CFIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TRUST 2007-FA3. Trust was formed as a common law trust (herein after referred to as "Issuing Trust") under New York law.   The corpus of the trust consists of a pool of residential mortgage notes purportedly secured by liens on residential real estate THE BANK OF NE YORK., was the original trustee for the Securitized Trust.[3]   Plaintiff alleges that the Securitized Trust has no continuing duties other than to hold assets and to issue various series of certificates of investment.  A description of the certificates of investment as well as the categories of mortgage loans is included in the prospectus filed with the Securities and Exchange Commission (SEC) on APRIL 27, 2007.  Plaintiff alleges that the investment certificates issued by the Securitized Trust were duly registered with the SEC.   A Certified True Copy will be presented under a Request for Judicial Notice.

39.   The closing date for the Securitized Trust was April 30, 2007 , or 90 days thereafter. **Plaintiff** alleges that the attempt to assign his note and deed of trust to the Securitized Trust was made after the closing date and, therefore, the assignment was ineffective.

40.   **Plaintiffs** are informed and believe, and thereon allege, that the purchase mortgage on the Property, the debt or obligation evidenced by the Note and the Deed of Trust executed by

---

[3]  Plaintiff's pleading does allege that The Bank of New York was the original trustee when the Securitized Trust was formed prior to 04-01-2007, but filings with the Securities and Exchange Commission identify The Bank of New York. as the original trustee.

**Plaintiffs** in favor of the original lender and other **Defendant**s, regarding the Property, was not properly assigned and transferred to **Defendant**s operating the pooled mortgage funds or trusts in accordance with the PSA of the entities making and receiving the purported assignments to this trust.  A tracking of the Promissory Note and Deed of Trust is presented herein as **EXHIBIT 3** to show how Bifurcation and Slander of Title was committed. [4]

41.   **Plaintiffs** allege that the PSA requires that each Note or Deed of trust had to be endorsed and assigned, respectively, to the trust and executed by multiple intervening parties before it reached the Trust.  Here, neither the Note nor the Deed of Trust was assigned to the Securitized Trust by the closing date.  Therefore, under the PSA, any assignments of the Deed of Trust beyond the specified closing date for the Trust are void.

42.   **Plaintiffs** further allege that even if the Deed of Trust had been transferred into the Trust by the closing date, the transaction is still void as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers and assignments to and from each intervening party.  Documents filed with the SEC by the securitization participants allegedly claim that the Note and Deed of Trust at issue in this case were sold, transferred and securitized claim that the Note and Deed of Trust at issue in this case were sold, transferred and securitized by **Defendants**, with other loans and mortgages with an aggregate principal balance of approximately $271,838,939.00, into the FIRST HORIZON

---

[4] In Carpenter v. Longan 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity." An obligation can exist with or without security. With no security, the obligation is unsecured but still valid. A security interest, however, cannot exist without an underlying existing obligation. It is impossible to define security apart from its relationship to the promise or obligation it secures. (Civil Code §§ 2872, 2909, 2920; California Mortgages and Deeds of Trust, and Foreclosure Litigation, by Roger Bernhardt, Fourth Edition, § 1.11) The obligation and the security are commonly drafted as separate documents – typically a promissory note and a deed of trust. If the creditor transfers the note but not the deed of trust, the transferee receives a secured note; the security follows the note, legally if not physically. If the transferee is given the deed of trust without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw 91952) 39 C.2d 179, 246 P.2d 23; *Polhemus v. Trainer* (1866) 30C 685).

ALTERNATIVE MORTGAGE SECURITIES TRUST 2007-FA3., which is a Common Law Trust formed pursuant to New York law.  A copy of the Summary of Information herein presented as **EXHIBIT 4**, a copy of the "Assignment of Loans" herein presented as **EXHIBIT 5**, and a copy of the "Conveyance of Asset" from the PSA as **F 6**.

43.   **Plaintiffs** are informed and believe, and thereon allege, that the FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TRUST 2007-FA3. had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificated of investment as described in the Prospectus identified herein below.  A detailed description of the mortgage loans which form the Trust FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TRUST 2007-FA. is included in Form 424B5 (the "Prospectus"), which has been duly filed with the SEC and which can be accessed through the below mentioned footnote.[5]

44.   **Plaintiffs** also allege that the Note was secured by the Deed of Trust.  **Plaintiffs** allege that as of the date of the filing of this Complaint, the Deed of Trust had not been legally assigned to any other party or entity.

45.   **Plaintiffs** are informed and believe, that **Defendant** NATIONSTAR MORTGAGE, LLC., alleges that it is the "holder and owner" of the Note and the beneficiary of the Deed of Trust.  However, the Note and Deed of Trust identify the mortgagee and note holder as the original lending institution or Mortgage Originator.  Documents state that the original lender allegedly sold the mortgage loan to FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TRUST 2007-FA**3**

46.   **Plaintiffs** further allege that no documents or records can be produced that demonstrate that prior to the closing date for FIRST HORIZON ALTERNATIVE MORTGAGE

---

[5] http://www.sec.gov/Archives/edgar/data/1396005/000093041307003856/c48191-425b5.htm

SECURITIES TUST 2007-FA3., the Note was duly endorsed, transferred and delivered FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TUST 2007-FA3.., including all intervening transfers.  Nor can any documents or records be produced that demonstrate that prior to the closing date, the Deed of Trust was duly assigned, transferred and delivered FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TUST 2007-FA3including all intervening assignments.

47.  **Plaintiffs** further allege that any documents that purport to transfer any interest in the Note to FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TUST 2007-FA3 after the Trust closing date are void as a matter of law, pursuant to New York trust law and relevant portions of the PSA.

48.  The link to the SEC and the various documents filed with the SEC regarding the Note are: SEC Website: http://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001337519&owner=exclude&count=40&hidefilings=0.

49.  **Plaintiffs** are further informed and believe, and thereon allege, that the purported assignments and transfers of **Plaintiffs**' debt or obligation did not comply with New York law, and/or other laws and statutes, and thus, do not constitute valid and enforceable "True Sales." Any security interest in the Property was, thus, never perfected.  The alleged holder of the Note is not the beneficiary of the Deed of Trust.  The alleged beneficiary of **Plaintiffs**' Deed of Trust does not have the requisite title, perfected security interest or standing to proceed; and/or is not the real party in interest with regard to any action taken or to be taken against the Property.

50.  **Plaintiffs** are also informed and believe, and thereon allege, that at all times herein mentioned, and any assignment of a Deed of Trust without proper transfer of the obligation that it secures is a legal nullity.

51.  As set forth hereinabove, **Defendant**s, and each of them, violated the express terms

of the PSA which is a Trust Agreement and which, along with another document, the Mortgage Loan Purchase Agreement, is the operative securitization document created by the finance and securitization industry to memorialize a particular securitization transaction.  The PSA specifies the rights and obligations of each party to the securitization transaction to each other, and is a public document on file with the SEC.  More specifically, the PSA requires strict compliance with its procedures and timelines in order for the parties to achieve their specific objectives.

52.    Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms.  The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe.  The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy.  In order to achieve the desired "bankruptcy remoteness" two "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

53.    A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party.  An offer would be made, accepted and compensation given to the "seller" in return for the Note.  The Notes would be transferred, and the deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and, furthermore, each Note would be endorsed to the next party by the previous assignee of record.

54.    In order for the Trustee of the Securitized Trust to have a valid and enforceable secured claim against **Plaintiffs**' Home, the Trustee must prove and certify to all parties that, among other things required under the PSA:

a.    There was a complete and unbroken chain of endorsements and transfers of the Note

from and to each party to the securitization (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust, and that all of these endorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

b.   The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all endorsements and assignments had been completed. Absent such proof, **Plaintiffs** allege that the Trust cannot demonstrate that it had perfected its security interest in **Plaintiffs**' Home that is the subject of this action. Therefore, if the **Defendant**s, and each of them, did not hold and possess the Note on or before the closing date of the Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case.

55.   **Plaintiffs** are informed and believe, and thereon allege, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the originator lender herein) agreed to transfer and endorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of **Plaintiffs**' herein and all other mortgage loans identified in the PSA.

56.   **Plaintiffs** are further informed and believe, and thereon allege, that the PSA provides that the transfers and assignments are absolute, were made for valuable consideration, to wit, in exchange for the certificated described in the PSA, and were intended by the parties to be a bona fide or "True Sale".   Since, as alleged herein below, True Sales did not actually occur. **Plaintiffs** allege that the **Defendant** NATION STAR MORTGAGE LLC are estopped and precluded from asserting any secured or unsecured claim in this case.

57.   **Plaintiffs** are further informed and believe, and thereon allege, that as a result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, sponsor

and Depositor[6] are estopped from claiming any interest in the Note that is allegedly secured by the Deed of Trust on **Plaintiffs**' Home herein.

58.   **Plaintiffs** are informed and believe, and thereon allege, that the Note in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Mortgage Originator to the Sponsor or to the Depositor nor from the Depositor to the Trustee for the Securitized Trust.   **Plaintiffs** further allege, on information and belief, that the PSA herein provides that the Mortgage Files of the Mortgages were to be delivered to FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TUST 2007-FA3., which Mortgage Files include the original Deeds of Trust, herein.

59.   Based upon the foregoing, **Plaintiffs** are further informed and believe, and thereon allege, that the following deficiencies exist, in the "True Sale" and securitization process as to this Deed of Trust which renders invalid any security interest in the **Plaintiffs**' mortgage, including, but not limited to:

a.   The splitting or separation of title, ownership and interest in **Plaintiffs**' Note and Deed of Trust of which the original lender is the holder, owner and beneficiary of Plaintiff's Deed of Trust;

b.   When the loan was sold to each intervening entity, there were no Assignments of the Deed of Trust to or from any intervening entity at the time of the sale.   Therefore, "True Sales" could not and did not occur;

c.   The failure to assign and transfer the beneficial interest in Plaintiff's Deed of Trust to Nationstar Mortgage LLC, in accordance with the PSA of the **Defendant**s, as

---

[6] The Originator is the lender who originally funded the loan; the Sponsor "collects" or "buys" the loans from different lenders, combines them, and then "sells" them to the Depositor; the Depositor "deposits" the loans into the Issuing Entity Trusts, and then, various bonds and certificates are sold; the Issuing Entity would be the "legal owner" of the Notes, though the actual documents would be held by Custodians.

Securitization Participants;

d.   The failure to endorse, assign and transfer **Plaintiffs**' Note and/or mortgage to **Defendant** THE BANK OF NEW YORK., as Trustee for FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TUST 2007-FA3., in accordance with the PSA;

e.   No Assignments of Beneficiary or Endorsements of the Note to each of the intervening entities in the transaction ever occurred, which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

f.   **Defendant**s, and each of them violated the pertinent terms of the PSA.

60.   **Plaintiffs**, therefore, allege, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the **Defendant**s in this case, hold a perfected and secured claim in the Property; and that all **Defendant**s are estopped and precluded from asserting an unsecured claim against Plaintiff's estate.

**FIRST CAUSE OF ACTION**
**For Unfair Trade Practices Involving Non Compliance**
**Under 15 USC Sections 45, Et.Seq.**
**Against All Defendants**

61.   Plaintiff reasserts and re-alleges all prior paragraphs as though fully set out and incorporated by reference herein.

62.   Full disclosure of the Mortgage and Note documents were not given to **Plaintiff** by **Original Lender** and/or **Doe Defendants**, at or after closing and/or completion of the Mortgage and Note transaction had taken place, and/or after **Plaintiff** had purported to sign the Mortgage and Note documents.

63.   Failure of the Original Lender to inform Plaintiff that they are not going to use their funds to fund this mortgage.

64.   The Failure of the Defendants to ask the permission of the Plaintiff that they would convert their Mortgage into Bond Certificates.  Plaintiff would be treated as merchandise with their

private information such as their credit score, and will be shared to their affiliates, clients, and investors to raise funds.

65.   The above-mentioned failure to disclose constitutes a false representation of the settlement agreement of said Mortgage and Note, in violation of Federal and State laws of the State of Hawaii.

66.   The violations set forth hereinabove are either caused by and/or imputed by ORIGINAL LENDER and/or DOE DEFENDANTS.

67.   As a direct, proximate and foreseeable result of ORIGINAL LENDER and/or DOE DEFENDANTS' actions, PLAINTIFF is subjected to the potential and/or actual loss of property and loss of use of property and other damages.

## SECOND CAUSE OF ACTION

**For Failure To Obtain Signed Loan Documents; Failure to Give 3 Day Cooling Period; and Failure to Give Conspicuous Writings In Violation  Of 15 U.S.C. §1601, Et.Seq. And Title 12, Regulation Z Part 226**

**Against All Defendants**

68.   Plaintiff re-alleges and reincorporates all prior paragraphs as if fully set forth herein.

69.   ORIGINAL LENDER and/or DOE DEFENDANTS failed to give the required notice in various loan documents and to have said documents signed by PLAINTIFF, as required by 15 U.S.C. 1601 et.seq. and Title 12, Regulation Z, Part 226 et.seq.

70.   ORIGINAL LENDER and/or DOE DEFENDANTS failed to give PLAINTIFF the required 3 day cooling off period, as required by Regulation Z and 15 U.S.C 1601 et.seq

71.   By reason of the foregoing, ORIGINAL LENDER and/or DOE DEFENDANTS has failed to make the disclosures required by 15 U.S.C. 1601 et seq. and Title 2 Code of Federal Regulations, Sec.226.18.

72.   Plaintiff is specifically in the class of persons this law was designed to protect. The violations set forth hereinabove are either caused by and/or imputed to ORIGINAL LENDER and/or DOE DEFENDANTS.

73.   As a direct, proximate and foreseeable result of ORIGINAL LENDER and/or DOE DEFENDANTS failure to provide proper notice, PLAINTIFF is subject to the potential and/or actual loss of property and loss of use of property and other damages.

### THIRD CAUSE OF ACTION

### For  Unfair And Deceptive Acts And Practices In Violation Of Chapter 480, HRS

### Against All Defendants

74.   Plaintiff re-alleges and reincorporates all prior paragraphs of this complaint as though fully set forth herein.

75.   The Actions and conduct of ORIGINAL LENDER and/or DOE DEFENDANTS' as it relates to PLAINTIFF and the subject Property are deceptive **acts** and practices and unfair methods of competition in the conduct of trade and/or commerce actionable under Sec.480-2. 480-13.

76.   As a direct, proximate and foreseeable result of ORIGINAL LENDER and/or DOE DEFENDANTS' actions, they are in violation of HRS 480-2 and in addition, HRS 480-13.

### FOURTH CAUSE OF ACTION

### For Violation Of The Fair Debt Collection Practices Act

### Against All Defendant

77.   Plaintiff reaffirms and re-alleges all prior paragraphs as if fully set forth herein.

78.   The state of California administrative rules "Department of Commerce and Consumer Affairs", Chapter 178 "Administrative Special Mortgage Recording Fee Guidelines" requires every transfer of an interest in real property, except fixtures, made as security for the performance of another **act** or subject to defeasance upon the payment of an obligation, to be properly recorded. The special mortgage recording fee (SMRF) is a special mortgage recording fee imposed on each mortgage and each amendment to a mortgage which increases the principal amount of the secured debt. The SMRF should been filed at the Bureau of Conveyances of the State of California or filed with the assistant registrar of the Land Court of the State **of** *California.* Since TITLE COMPANY apparently has traded (sold) the borrower's mortgage and the mortgage to ISSUING ENTITY, and the mortgage continued to accrue interest,  Nationstar Mortgage Corporation should have filed a SMRF and an assignment of mortgage for each assignment or sale.

79.    Defendant PSA Trustee has sought to foreclose Plaintiff real property and receive a distribution from the sale of Plaintiff's property without possessing legally enforceable, recorded assignments of mortgages from the actual mortgagees. Under California law, before an entity would be entitled to receive a distribution from the sale of real property, their interest therein must have been recorded.

80.    Defendants **act** of pursuing a **foreclosure** action without the requisite legal title, while falsely stating that it had such title, and while lacking the right to engage in trust business in **California,** constitutes a "false, deceptive or misleading representation or means" in connection with the collection of a debt, in violation of the Federal Fair Debt Collection Procedures **Act,** 15 U.S.C. § 1692e.

81.    All of the Defendants are "debt collectors" as defined in 15 U.S.C. § 1692e, because they regularly use instrumentalities of interstate commerce, and the mails, in attempting to collect, directly, or indirectly, debts owed or due or asserted to be owed or due to another, namely the actual lenders, mortgagors, and certificate-holders under the above-referenced pooling and servicing agreements.

82.    Upon information and belief, there remains no record in the lawsuit of the complete and proper assignments from Defendants through intervening purchasers or investors of the subject loan, to PSA Trustee, and Defendants failed have failed to establish a complete chain of assignment from the originator to the person assigning the mortgage to other third parties and perhaps ultimately to DEFENDANT PSA TRUSTEE.

83.    As a direct and proximate result of the actions of Defendants, Plaintiff has and continues to suffer damages in such amounts as shall be proven at the time of trial.

### FIFTH CAUSE OF ACTION

#### For Violations Of Real Estate Settlement Procedures Act

##### Against All Defendants

84.    Plaintiff reaffirms and re-alleges all preceding paragraphs hereinabove as if set forth fully herein.

85.    As mortgage lenders, Original Lender and RSA are subject to the provisions of the REAL ESTATE SETTLEMENT PROCEDURES **ACT** ("RESPA"), 12 U.S.C. § 2601 *et seq.*

86.     The Real Estate Settlement Procedures **Act,** 12 U.S.C. § 2605(e) (RESPA), Section 6 requires lenders and their servicers to acknowledge written requests within 20 business days and to try to resolve the issue(s) within 60 business days. PLAINTIFF submitted a request for information and a request that TITLE COMPANY (as successor to Original Lender) and ISSUING TRUST resolve servicing issues and this was neither acknowledged nor resolved in a timely manner and consequently, TITLE COMPANY and ISSUING TRUST are liable to PLAINTIFF for all damages they have suffered as a result of having to hire an attorney to help them resolve these issues, as well as obtain recovery for other consequential damages.

87.     Pursuant to RESPA, TITLE COMPANY and ISSUING TRUST are liable to PLAINTIFF in amount equal to the sum of actual damages and such additional damages as the court may allow, and the costs of action together with reasonable attorney's fees. 12 U.S.C. § 2605 requires disclosure to a loan applicant if the servicing of the loan is assigned, sold or transferred. ORIGINAL LENDER sold and transferred the loan to TITLE COMPANY. TITLE COMPANY at some point transferred the loan to ISSUING TRUST. Both TITLE COMPANY and ORIGINAL LENDER failed to timely and promptly notify PLAINTIFF of the assignment or sale or transfer of the alleged note and/or mortgage for the subject property.

88.     As a result of the foregoing violations, PLAINTIFF has been forced to hire counsel to obtain relief and Defendants are liable to PLAINTIFF for actual damages, treble damages, and such other damages as the court may award, together with costs of the action and reasonable attorneys' fees.

<u>**SIXTHCAUSE OF ACTION**</u>

<u>**For Violation Of Fair Credit Reporting Act**</u>

**Against All Defendants**

89.     Plaintiff reaffirms and re-alleges all prior paragraphs as if set forth more fully herein.

90.     At all times material, TITLE COMPANY, ORIGINAL LENDER and ISSUING TRUST qualified as providers of information to the credit reporting agencies, including but not limited to, Experian, Equifax, and TransUnion under the Federal Fair Credit Reporting **Act.** TITLE COMPANY, ORIGINAL LENDER and ISSUING TRUST wrongfully, improperly, and illegally reported negative information as to PLAINTIFF to one of more credit reporting agencies, resulting

in PLAINTIFF having negative information on their credit reports and the lowering of their FICO scores.

91.    Pursuant to 15 U.S.C. § 1681 (s)(2) (b), PLAINTIFF is entitled to maintain a private cause of action against TITLE COMPANY, ORIGINAL LENDER and ISSUING TRUST for an award of damages in an amount to be proven at the time of trial for all violations of the fair credit reporting **act** which caused actual damages to Plaintiff, including emotional distress and humiliation.

92.    PLAINTIFF is entitled to recover damages from TITLE COMPANY, ORIGINAL LENDER and ISSUING TRUST for negligent non-compliance with the Fair Credit Reporting **Act** pursuant to 15 U.S.C. § 1681(o).

93.    PLAINTIFF is also entitled to an award of punitive damages against TITLE COMPANY, ORIGINAL LENDER and ISSUING TRUST for their willful noncompliance with the Fair Credit Reporting **Act** pursuant to 15 U.S.C. § 1681(n)(a)(2) in an amount to be proven at the time of trial.

### SEVENTH CAUSE OF ACTION

**For Intentional Or Fraudulent Misrepresentation**

**Against Original Lender, Title Company, And Issuing Trust**

94.    Plaintiff reaffirms and re-alleges all prior paragraphs hereinabove as if set forth fully herein.

95.    ORIGINAL LENDER and TITLE COMPANY AND ISSUING TRUST knowingly and intentionally concealed material information from PLAINTIFF which is required by federal statutes and regulations to be disclosed to the Plaintiff both before and the time of closing.

96.    ORIGINAL LENDER and TITLE COMPANY AND ISSUING TRUST also materially misrepresented material information to the plaintiffs with full knowledge by ORIGINAL LENDER and TITLE COMPANY AND ISSUING TRUST at their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

97.    The omissions of material fact and/or the material misrepresentation of material facts include but are not limited to, the following:

a.    Misrepresenting Plaintiff's income;

b.   Misrepresenting and/or concealing the failure of Lender or its predecessors and/or its employees and agents to follow usual and customary underwriting guidelines to qualify Plaintiff for a loan;

c.   Misrepresenting and/or concealing the true terms of the loan;

d.   Misrepresenting and/or concealing the true amount of interest Plaintiff would have to pay over the life of the loan;

e.   Concealing that property values were declining and would likely continue to do so in the foreseeable future;

f.   Concealing that Plaintiff would likely experience mortgage payment distress and had a high likelihood of defaulting on the note;

g.   Concealing that there would not be sufficient equity in the Property to refinance the loan;

h.   Concealing that ORIGINAL LENDER and TITLE COMPANY AND ISSUING TRUST would wrongfully, improperly, and illegally report negative information as to the PLAINTIFF to one of more credit reporting agencies, resulting in PLAINTIFF having negative information on their credit reports and the lowering of their FICO scores such that they would not be able to qualify in the future to refinance the subject loan.

98.   Under the circumstances, the material omissions and the material misrepresentations of ORIGINAL LENDER and TITLE COMPANY AND ISSUING TRUST were malicious.

99.   PLAINTIFF, not being an investment banker, securities dealer, mortgage lender, mortgage broker, or mortgage lender, reasonably relied upon the representations of ORIGINAL LENDER and TITLE COMPANY AND ISSUING TRUST in agreeing to execute the mortgage loan documents.

100.  Had PLAINTIFF known of the falsity of ORIGINAL LENDER and TITLE COMPANY AND ISSUING TRUST' representations, they would not have entered into the transactions which are the subject of this action.

101.  As a direct and proximate cause of ORIGINAL LENDER, TITLE COMPANY and ISSUING TRUST's material omissions and material misrepresentations, PLAINTIFF has suffered damages in such amounts as shall be proven at the time of trial.

**EIGHTHCAUSE OF ACTION**
**For Intended/ Attempted Wrongful Foreclosure**
**Based On Lack Of Legal Standing To Foreclose**
**Against All Defendants**

102.  Plaintiffs re-allege and reincorporate by reference all preceding paragraphs as though fully set forth herein.

103.  An actual controversy has arisen and now exists between Plaintiffs and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiffs contend that Defendants, and each of them, do not have the right to foreclose on the Property because Defendants, and each of them, have failed to perfect any security interest in the Property.  Thus, the purported power of sale by the above specified Defendants, and each of them, does not apply. Plaintiffs further contend that the above specified Defendants, and each of them, do not have the right to foreclose on the Property because said Defendants, and each of them, did not properly comply with the terms of Defendants' own securitization requirements and falsely or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

104.  Plaintiffs are informed and believe and there upon allege that the only individual who has standing to foreclose is the holder of the note because they have a beneficial interest. The only individuals who are the holder of the note are the certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains; furthermore, all of the banks in the middle were paid in full.

105.  Plaintiffs request that this Court find that the purported power of sale contained in the Note and Mortgage has no force and effect at this time, because Defendants' actions in the

processing, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws designed to protect borrowers, which has directly caused Plaintiffs to be at an equitable disadvantage to Defendants, and each of them.  Plaintiffs further request that title to the Property remain in its name, with said Mortgage remaining in beneficiaries' name, during the pendency of this litigation, and deem that any attempted sale of the Property is "unlawful and void".

106.  Defendants, and each of them, through the actions alleged above, have illegally commenced foreclosure under the Note on the Property via a foreclosure action supported by false or fraudulent documents.  Said unlawful foreclosure action has caused and continues to cause Plaintiffs great and irreparable injury in that real property is unique.

107.  The wrongful conduct of the above-specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiffs.  Plaintiffs will not have the beneficial use and enjoyment of its Home and will lose the Property.

108.  Plaintiffs have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs. Plaintiffs have suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Plaintiffs to determine the precise amount of damage it will suffer.

**NINTH CAUSE OF ACTION**
**For Intentional Infliction Of Emotional Distress**
**Against All Defendants**

109.  Plaintiffs re-allege and incorporated by reference all preceding paragraphs as though fully set forth herein.

110. The actions of Defendants, as set forth herein, have resulted in the Plaintiffs being threatened with the loss of the Property.

111. This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

112. Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiffs those Defendants were entitled to exercise the power of sale provision contained in the Mortgage. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

113. Defendants' conduct – fraudulently attempting to foreclose on a property in which they have no right, title, or interest – is so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community.

114. Such conduct was undertaken with the specific intent of inflicting emotional distress on the Plaintiffs, such that Plaintiffs would be so emotionally distressed and debilitated that he/she would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure the alleged default, right to verify the alleged debt that Defendants are attempting to collect, and right to clear title to the Property such that said title will regain its marketability and value.

115. At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt.  Defendants, and each of them, committed the acts set forth above with complete; utter and reckless disregard of the probability of causing Homeowners to suffer severe emotional distress.

116. As an actual and proximate cause of Defendants attempt to fraudulently foreclose on Plaintiff's home, the Plaintiffs have suffered severe emotional distress, including but not limited

to lack of sleep, anxiety, and depression.

117. Plaintiffs did not default in the manner state in the Notice of Default, yet because Defendants' outrageous conduct, Plaintiffs have been living under the constant emotional nightmare of losing the Property.

118. As a proximate cause of Defendant's conduct, Plaintiffs have experienced many sleepless nights, severe depression, lack of appetite, and loss of productivity at its place of employment.

119. The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despise by ordinary people. Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

120. ORIGINAL LENDER, TITLE COMPANY, ISSUING TRUST and DEFENDANT PSA TRUSTEE or its predecessors and/or its employees and agents owed Plaintiff a duty to avoid negligently and/or intentionally inflicting severe mental and emotional distress upon Plaintiff.

121. ORIGINAL LENDER, TITLE COMPANY, ISSUING TRUST and DEFENDANT PSA TRUSTEE or its predecessors and/or its employees and agents breached their duties by causing Plaintiff to suffer severe mental and emotional distress, by misleading her, providing a loan product she was not properly qualified for, in causing her to lose her savings, by giving her false hope she would qualify for a loan modification, that she would be allowed loan assistance or modification on reasonable terms that would allow PLAINTIFF to keep her interest in the Property, among other things.

122. The wrongful **acts** and/or omissions of ORIGINAL LENDER, TITLE COMPANY AND ISSUING TRUST and DEFENDANT PSA TRUSTEE or its predecessors and/or its employees and agents were a substantial factor and/or proximate cause of Plaintiff suffering

injuries and damages.

123.  As a result of the wrongful **acts** and/or omissions of ORIGINAL LENDER, TITLE COMPANY, ISSUING TRUST and DEFENDANT PSA TRUSTEE or its predecessors and/or its employees and agents, Plaintiff is entitled to various remedies including, but not limited to, rescission, reimbursement, equitable recoupment, indemnification, damages (statutory, actual, punitive and/or treble damages), attorneys' fees and costs, and injunctive relief.

**TENTH CAUSE OF ACTION**
**For Slander Of Title**
**Against All Defendants**

124.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

125.  Plaintiffs incorporate here each and every allegation set forth above.  Defendants, and each of them, disparaged Plaintiffs' exclusive valid title by and through the preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the RECORDED DOCUMENTS.

126.  Said Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property.  These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiffs' legal title to the Property.  By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiffs' legal title was made to the world at large.

127. As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiffs' title to the Property has been disparaged and slandered, and there is a cloud on Plaintiffs' title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be

proved at trial.

128. As a further proximate result of Defendant's conduct, Plaintiffs have incurred expenses in order to clear title to the Property.  Moreover, these expenses are continuing, and Plaintiffs will incur additional charges for such purpose until the cloud on Plaintiffs' title to the property has been removed.  The amounts of future expenses and damages are not ascertainable at this time.

129. As a further direct and proximate result of Defendants' conduct, Plaintiffs have suffered humiliation, mental anguish, anxiety, depression and emotional and physical distress, resulting in the loss of sleep and other injuries to his and her health and well-being, and continue to suffer such injuries on an ongoing basis.  The amount of such damages shall be proven at trial.

130. At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiffs and deprive them of their exclusive right, title and interest in the Property, and to obtain the Property for their own use by unlawful means.

131. The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious.  Therefore, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

## ELEVENTHCAUSE OF ACTION
### For Civil Rico
### Against All Defendants

A.

Acquisition and Maintenance of an Interest in and Control of
an *Enterprise* Engaged in a *Pattern of Racketeering Activity*:
18 U.S.C. §§ 1961(5), 1962(b)

132.  Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

133.  At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO *enterprise* of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

134.  During the ten (10) calendar years preceding  August 1, 2010., all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities).

135.  Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(b) *supra*.

136.  Pursuant to the original Statutes at Large, the RICO laws itemized above are to be *liberally* construed by this honorable Court.  Said construction rule was never codified in Title 18 of the United States Code, however.  See 84 Stat. 947, Sec. 904, Oct. 15, 1970.

137.  *Respondent superior* (principal is liable for agents' misconduct: knowledge of, participation in, and benefit from a RICO enterprise).

*B.*

Conduct and Participation in a RICO *Enterprise*
Through a *Pattern of Racketeering Activity*:
18 U.S.C. §§ 1961(5), 1962(c)

138. Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates the same by reference, as if all were set forth fully herein.  Substance prevails over form.

139.  At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did associate with a RICO *enterprise* of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

140.  Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO *enterprise* through a *pattern of racketeering activity*, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

141.  During the ten (10) calendar years preceding July 1, 2010., all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities).

142.  Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner, which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(c) *supra*.

143.  Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above are to be *liberally* construed by this honorable Court.  Said construction rule was never codified in Title 18 of the United States Code, however. *Respondent superior* (as explained above).

C.
Conspiracy to Engage in a
*Pattern of Racketeering Activity*:
18 U.S.C. §§ 1961(5), 1962(d)

144.  Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

145.  At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did conspire to acquire and maintain an interest in a RICO *enterprise* engaged in a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ 1962(b) and (d).

146.  At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did also conspire to conduct and participate in said RICO *enterprise* through a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ 1962(c) and (d).  See also 18 U.S.C. §§ 1961(4), (5) and (9).

147.  During the ten (10) calendar years preceding July 1, 2010 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. 1962(d).

148.  Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of 18 U.S.C. 1962(d) (Prohibited activities *supra*).

149.  Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above are to be *liberally* construed by this honorable Court.  Said construction rule was never codified in Title 18 of the United States Code, however.  *Respondent superior* (as explained above).

150.  USC 891-984 Extortionate credit transactions; 1341 mail fraud, 1343 wire fraud, 1344 financial institution fraud, 1503 obstruction of justice, 1952 racketeering, 1956 laundering of monetary instruments, 1957 monetary transaction derived from specified unlawful activity, and 29 USC 186 501c – fraud connected with a case under title 11, fraud in the sale of securities.

**TWELFTH CAUSE OF ACTION**
**For Bad Faith Or Breach Of The Implied Covenant Of Good Faith And Fair Dealing**
**Against All Defendants**

151.  Plaintiff reaffirms and re-alleges all prior paragraphs as if set forth fully herein.

152.  ORIGINAL LENDER, TITLE COMPANY, TRUSTEE, ISSUING TRUST and PSA TRUSTEE or its predecessors and/or its employees and agents owed Plaintiff a duty to deal with him in good faith and in a fair manner.

153.  ORIGINAL LENDER, TITLE COMPANY, PSA TRUSTEE, ISSUING TRUST and PSA TRUSTEE or its predecessors and/or its employees and agents failed to deal with Plaintiff in good faith and in a fair manner by making various misrepresentations of material fact and/or omissions of material fact, not making the mandatory federal law disclosures, not providing loan relief and/or modification of loan terms so Plaintiff could maintain his/her/their interest in the Property, including but not limited to, failing to disclose that Plaintiff was not financially qualified for the loan, and/or the likelihood of the value of the Property falling, that Plaintiff was likely to default, and would not qualify for refinancing.

154.  The wrongful **acts** and/or omissions of ORIGINAL LENDER, TITLE COMPANY, PSA TRUSTEE, ISSUING TRUST and PSA TRUSTEE or its predecessors and/or its employees and agents were a substantial factor and/or proximate cause of PLAINTIFF suffering various injuries and damages.

155.  As a result of the wrongful **acts** and/or omissions of ORIGINAL LENDER, TITLE COMPANY, PSA TRUSTEE, ISSUING TRUST and PSA TRUSTEE or its predecessors and/or its employees and agents, Plaintiff is entitled to various remedies including, but not limited to, rescission, reimbursement, equitable recoupment, indemnification, damages (statutory, actual, punitive, and treble damages), attorney's fees and costs, and injunctive relief.

**THIRTEENTH CAUSE OF ACTION**

**For Declaratory Relief**
**Against All Defendants**

156.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

157.  An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their rights and duties regarding the Note and Trust Deed.

158.  Plaintiffs contend that pursuant to the Loans, Defendants do not have authority to foreclose upon and sell the Property.

159.  Plaintiffs are informed and believed and upon that basis alleges that Defendants dispute Plaintiffs contention and instead contend they may properly foreclose upon the Property.

160.  Plaintiffs thereof request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the Property.

161.  Plaintiffs request a determination of the validity of the Trust Deeds as of the date the Notes were assigned without a concurrent assignation of the underlying Trust Deeds.

162.  Plaintiffs request a determination of the validity of the NOD.

163.  Plaintiffs request a determination of whether any Defendant has authority to foreclose on the Property.

**FOURTEENTH CAUSE OF ACTION**
**For Injunctive Relief**
**Against All Defendants**

164.  Plaintiff re-alleges and reincorporates all prior paragraphs of this Complaint as though fully set out herein.

165. PLAINTIFF has been and will be seriously injured unless ORIGINAL LENDER's judicial **foreclosure** action and other related activities are preliminarily and permanently enjoined. PLAINTIFF will suffer irreparable injury of a continuing nature that cannot be adequately calculated or compensated in money damages. PLAINTIFF seeks an injunction to enjoin ORIGINAL LENDER and any and all other Defendant from proceeding with the judicial **foreclosure** sale against PLAINTIFF and the subject property.

Plaintiff demands trial by jury in this action

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs will ask for the following for each Claim for Causes of Action to be awarded:

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a. Plaintiffs are the prevailing party;

    b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

    c. The Sponsor has no enforceable secured or unsecured claim against the Property;

    d. The Depositor has no enforceable secured or unsecured claim against the Property;

    e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property.

Dated: January 14, 2014

_____
LINDA Z. VOSS, ESQ